NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

_____
                                    :
RONALD ELLERMAN,                    :
                                    :   Civil Action No. 14-5614 (RMB)
            Petitioner,             :
                                    :
     v.                             :
                                    :
THE NEW JERSEY STATE                :
PAROLE BOARD, et al.,               :
                                    :   MEMORANDUM OPINION
            Respondents.            :
_____:

**BUMB**, District Judge:

  This matter comes before the Court upon Petitioner's filing of a § 2254 application ("Petition"), see Docket Entry No. 1, which arrived accompanied by his request to proceed in this matter in forma pauperis. See Docket Entry No. 1-1.

  Petitioner is a state prisoner currently confined at the Southern State Correctional Facility at Delmont, New Jersey. See id. at 3. Since the Petition is silent as to his currently served term and the circumstances of his conviction, this Court takes judicial notice of Petitioner's records at the website of the New Jersey Department of Corrections ("NJDOC"). See Fed. R. Evid. 201(b); see also In re NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1331 (3d Cir. 2002) (judicial notice can be taken of the documents relied upon in pleadings, filed with a law enforcement

agency, and of informational opinion-free data compiled by a widely quoted and reliable service).

The NJDOC indicated that, on October 14, 2011, Petitioner was convicted of three offenses, i.e., possession of controlled dangerous substances ("CDS") within 500 feet of public housing and operation of a CDC facility on January 6, 2010, and operation of a CDS facility on October 20, 2010.  See https://www6.state.nj.us/DOC_Inmate/details?x=1467227&n=0.  The Superior Court of New Jersey sentenced him to three different terms; two to seven years in prison and one to ten years in prison.  See id.  Petitioner's next parole eligibility date is May 7, 2015, and all his sentences are expected to expire on May 29, 2018, that is, if credits allowed under the state law are factored in.  See id.

Petitioner had a parole hearing sometime during the spring or early summer of 2013.  See Docket Entry No. 1, at 4.  On July 26, 2013, "the New Jersey State Parole Board [("NJSPB")] two-member panel" declined to release him on parole and imposed a future eligibility term ("FET"), under which he became eligible for another parole review in twenty months, i.e., on May 7, 2015.

Displeased with that development, Petitioner filed an appeal with the Full Board of the NJSPB.  See Docket Entry No. 1, at 4.  That appeal was denied on February 26, 2014.  See id.  The Petition at bar followed half a year later.

Here, Petitioner named the NJSPB and its Chairman, as well as the Attorney General and Petitioner's warden as Respondents, and sought this Court's order "declaring that Petitioner's [FET] and continued confinement [were] not authorized [under the state law] and violate[d] the Fifth Amendment." See id. at 12.  He conceded that "[n]o further appeals to any other agencies or courts were taken," but nonetheless maintained that he duly exhausted his claims.  See id. at 4.  Elaborating on his claims, he stated that: (a) he "completed numerous programs throughout [his] confinement"; (b) he was either "a model prisoner" or "an average to above-average prisoner" or a prisoner who "gained and maintained minimum status"; (c) he had "a pre-approved favorable parole address" and "family members [who were] in support [of his] release," as well as "strong ties in the community"; (d) he promised to "abide by the general and special conditions" the NJSPB could impose and "not [to] pose a danger to public safety"; and (e) he was of the opinion that "several [unspecified in the Petition] reasons [upon the NJSPB relied] for its denial" of parole were insufficient since Petitioner believed that there were "[n]o special circumstances . . . to justify[ his] continued confinement" and "no significant credible evidence that [he would] re-offend . . . in the foreseeable future."  Id. at 1-9.

Simply put, Petitioner claimed that his Fifth Amendment rights were violated because he believed that "the finding [of]

fact by [the NJSPB] that [he] would pose a great threat to the community [were] irrelevant" since, on his own, Petitioner was convinced that there was no "sufficient[ly] solid evidence" or "grounds in support" of that finding. Id. at 10.

The Petition is deficient procedurally and substantively. First, the sole proper Respondent in this § 2254 matter is Petitioner's warden, and all other Respondents, i.e., the NJSPB, its Chairman and the Attorney General shall be terminated as Respondents. See Rumsfeld v. Padilla, 542 U.S. 426, 435 (2004) ("[T]he proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official").

Second, Petitioner's claims are unexhausted since he conceded not taking any state court action until after his appeal to the Full Board was denied. A state prisoner applying for a writ of habeas corpus in a federal court must first "exhaust the remedies available in the *courts* of the State" unless "there is an absence of available State corrective process[] or . . . circumstances exist that render such process ineffective." 28 U.S.C. § 2254(b)(1) (emphasis supplied); see also Rose v. Lundy, 455 U.S. 509, 515 (1982); Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997), cert. denied, 532 U.S. 919 (2001).

While exhaustion is not a jurisdictional requirement, it is designed to allow state *courts* the first opportunity to pass upon

4

federal constitutional claims, in furtherance of the policies of comity and federalism, see Granberry v. Greer, 481 U.S. 129, 131 (1987), and to enable a proper federal habeas review, governed by Section 2254, which provides that "[a]n application for a writ of habeas corpus . . . shall not be granted with respect to any claim . . . adjudicated on the merits in State *court* proceedings unless the adjudication of [that] claim . . . resulted in a decision that was contrary to . . . clearly established Federal law . . . or resulted in a decision that was based on an unreasonable determination of the facts . . . in the State *court* proceeding."  28 U.S.C. § 2254(d) (emphasis supplied).

A petitioner exhausts state remedies by presenting his federal constitutional claims to each level of the state courts empowered to hear those claims, and the petitioner generally bears the burden to establish proper exhaustion or excuse from the exhaustion requirement.  See Toulson v. Beyer, 987 F.2d 984, 987 (3d Cir. 1993).  Notably, New Jersey law provides an *absolute right* to appeal any action or decision of a state administrative agency to the Superior Court, Appellate Division, under: (a) the State Constitution, N.J. Const. Art. VI, Sec. 5, ¶ 4, see Trantino v. N.J. State Parole Bd., 166 N.J. 113, 172, modified on other grounds, 167 N.J. 619 (2001); and also under (b) the New Jersey Court Rules.  See N.J. Ct. Rule 2:2-3(a)(2).  This procedure allows for appeals from "inaction as well as action of

5

a State administrative agency."  Trantino v. N.J. State Parole Bd., 296 N.J. Super. 437, 459-460 (N.J. Super. Ct. App. Div. 1997), modified on other grounds and affirmed, 154 N.J. 1 (1998); see also Johnson v. State Parole Board, 131 N.J. Super. 513, 517-18 (N.J. Super. Ct. App. Div. 1974), certif. denied, 67 N.J. 94 (1975); accord Petrucelli v. Dep't of Civ. Service, 28 N.J. Super. 572, 575, 101 A.2d 363 (N.J. Super. Ct. App. Div. 1953) ("The import of the rule embraces official administrative conduct of a negative character as well, such as, for example, the refusal to consider a meritorious petition, or to conduct a hearing, or to render any decision in a controversial cause"). Moreover, the state rules enable all litigants to seek certification from the Supreme Court.  See N.J. Ct. R. 2:12-3. Hence, an appeal to the Full Board of the NJSPB cannot qualify as a proper exhaustion of state remedies: a litigant displeased with the outcome of such appeal is obligated to seek review from the Appellate Division and, if dissatisfied with the outcome, seek certification from the New Jersey Supreme Court.

   Since, here, Petitioner concedes that he did not present his claims to the Appellate Division and did not seek certification from the Supreme Court of New Jersey, his Petition is subject to dismissal as unexhausted.

Moreover, even if this Court were to presume that Petitioner could establish a viable excuse from the exhaustion requirement, his Petition does not indicate that he is entitled to relief.[1] Here, Petitioner did not specify what facts the NJSPB considered, and his Petition does not include any findings served upon him by the NJSPB.  However, Petitioner concedes that the NJSPB's decision was based on some evidence (although he believes that this evidence was insufficiently "solid" or convincing and argues that his denial of parole and 20-month FET were improper since he achieved rehabilitative skills and made substantial progress while incarcerated).

The "Due Process Clause contains a substantive component that bars certain arbitrary, wrongful governmental actions regardless of the fairness of the procedures used to implement them." Foucha v. Louisiana, 504 U.S. 71, 80 (1992).  But, as the Supreme Court explained,

> Our cases dealing with abusive executive action have repeatedly emphasized that only the most egregious official conduct can be said to be arbitrary in the constitutional sense . . . .  To this end, for half a

---

[1] To the extent that Petitioner's claims are unexhausted and/or procedurally defaulted, this Court can deny them on the merits under 28 U.S.C. § 2254(b)(2).  See Taylor v. Horn, 504 F.3d 416, 427 (3d Cir. 2007) ("Here, because we will deny all of [petitioner's] claims on the merits, we need not address exhaustion"); Bronshtein v. Horn, 404 F.3d 700, 728 (3d Cir. 2005) ("Under 28 U.S.C. § 2254(b)(2), we may reject claims on the merits even though they were not properly exhausted, and we take that approach here").

> century now we have spoken of the cognizable level of executive abuse of power as that which shocks the conscience.

County of Sacramento v. Lewis, 523 U.S. 833, 847-48 (1998) (citations and internal quotation marks omitted).

Applying this standard, the Court of Appeals rejected substantive due process challenges to state parole board decisions in Coady v. Vaughn, 251 F.3d at 487, and Hunterson v. DiSabato, 308 F.3d 236, 246-47 (3d Cir. 2002).  In Coady, the prisoner insisted that the parole board's decision violated his due process rights because the board used an impermissible criteria to deny him parole, applied erroneous descriptions of the conduct underlying his offense, and considered false information.  The Court of Appeals rejected his claims pointing out that "federal courts [were] not authorized by the due process clause to second-guess parole boards and the requirements of substantive due process are met if there is some basis for the challenged decision."  Coady, 251 F.3d at 487.

Moreover, in Hunterson, the Court of Appeals *reversed* an order granting the writ to a New Jersey inmate who claimed that a parole board's decision imposing a five-year FET was arbitrary, capricious, and an unreasonable abuse of discretion.  The Court of Appeals explained that

> this type of constitutional challenge to a state [parole] proceeding is not easily mounted.  We have made clear that the federal courts, on habeas review,

> are not to second-guess parole boards, and *the requirements of substantive due process are met if there is some basis for the challenged decision . . . .* The relevant level of arbitrariness required in order to find a substantive due process violation involves not merely action that is unreasonable, but, rather, something more egregious, which we have termed at times conscience shocking or deliberately indifferent.

Hunterson, 308 F.3d at 246-47 (citations and internal quotation marks omitted, emphasis supplied).

Here, Petitioner asserts that the evidence relied upon by the NJSPB was insufficient and should have been ignored. Petitioner, however, does not dispute that the NJSPB: (a) made its decisions on the basis of this actually existing evidence; and (b) factored into its decisions Petitioner's advancements and balanced the favorable considerations against the negative ones. Consequently, it was within the NJSPB's discretion to conclude that the outcome of this balancing process warranted denial of Petitioner's release on parole regardless of the advancements he achieved during the last three years.[2]

---

[2] In Mickens-Thomas v. Vaughn, 321 F.3d 374 (3d Cir. 2003), the Court of Appeals reviewed how the Pennsylvania Parole Board implemented a parole rule change and found an ex post facto violation. There, the state legislature added language to the parole statute that public safety must be considered "foremost," id. at 377, and that change affected the balancing test based on several factors. The Mickens-Thomas Court held that making "concern for public safety" the overriding consideration for parole violated the Ex Post Facto Clause since it obligated the parole board to default on its duty to consider "all factors counseling in favor of release." 321 F.3d at 387. Here, however, there was no parole rule change that could have triggered ex post facto considerations, and no indication that the NJSPB defaulted

Since Petitioner's allegations indicated that there was "some basis" for the NJSPB's decisions to deny parole and impose a 20-month FET, the Petition failed to show that these decisions shocked the conscience or the NJSPB was deliberately indifferent to the facts favorable to Petitioner, and this Court is not in the position to second-guess the NJSPB's decisions. Thus, Petitioner's substantive due process claims are meritless, see Hunterson, 308 F.3d at 247-48, and his Petition is subject to dismissal on the merits, as well as for failure to exhaust.[3]

This Court must now determine whether a certificate of appealability should issue. See Third Circuit Local Appellate Rule 22.2. The Court may issue a certificate of appealability only if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court denies a habeas petition on procedural grounds, the prisoner must demonstrate that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the

---

on its duty to consider "all factors counseling in favor of [Petitioner's] release." While Petitioner made it abundantly clear that he was displeased with the NJSPB's refusal to find that "all factors counseling in favor of [Petitioner's] release" outweighed evidence counseling against his release, Petitioner's displeasure cannot translate into a constitutional violation.

[3] While Petitioner repeatedly used the phrase "procedural due process," Petitioner's procedural due process claims appear devoid of any factual predicate, since he indicated that he was provided with a parole hearing, had an opportunity to present favorable evidence and was served with the findings of NJSPB.

denial of a constitutional right; and (2) whether the court was correct in its procedural ruling.  See Slack v. McDaniel, 529 U.S. 473, 484 (2000).  "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further."  Id.  Here, the Court determined that Petitioner's claims should be dismissed as unexhausted, and the Court is persuaded that reasonable jurists would not debate the correctness of this conclusion.  The Court also presumed that the lack of exhaustion might be excused and addressed all of Petitioner's claims on the merits.  Thus, a different certificate-of-appealability analysis might apply here.  Just as with claims dismissed on procedural grounds, a certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  However, "[a] petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims."  Miller-El v. Cockrell, 537 U.S. 322, 327 (2003).  Here, Petitioner failed to make a substantial showing of the denial of a constitutional right, and the Court is persuaded that jurists of reason would not disagree with this conclusion.  Therefore, no certificate of appealability will issue.

However, mindful of the patchy, conclusory style of Petitioner's allegations, this Court finds it appropriate to retain temporary jurisdiction over this matter so to enable Petitioner to clarify his facts, if any, demonstrating that, contrary to what the Petition suggests: (a) he did exhaust his denial of parole claims in the state courts; and (b) the NJSPB's decisions to deny Petitioner's release on parole and to impose 20-month FET, when evaluated objectively and on the merits, resulted in an outcome that cannot be reasonably justified since these determinations lacked even some evidence in support. See McFarland v. Scott, 512 U.S. 849, 856 (1994) ("Habeas corpus petitions must meet heightened pleading requirements").

For the foregoing reasons, Petitioner's application to proceed in this matter in forma pauperis will be granted, his Petition will be dismissed as unexhausted or, alternatively, on the merits, and no certificate of appealability will issue.  The Clerk will be directed to administratively terminate this matter. see Papotto v. Hartford Life & Accident Ins. Co., 731 F.3d 265 (3d Cir. 2013) ("administrative closings are a practical tool used by courts to prune overgrown dockets and are particularly useful in circumstances in which a case, though not dead, is likely to remain moribund").  This Court will retain its jurisdiction over this action so to allow Petitioner an

opportunity to file an amended pleading containing clarifications in accordance with the guidance provided in this Opinion.

An appropriate Order follows.

                                            s/Renée Marie Bumb
                                            **RENÉE MARIE BUMB**
                                            **United States District Judge**

Dated: September 30, 2014